UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MUDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 693 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Deborah Mudge brings this action under 42 U.S.C. §§ 405 and 1383 for judicial review of the Commissioner's final decision finding that her disability ended January 8, 2016. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I must affirm the decision.

**Procedural History**

On February 24, 2015, the Social Security Administration denied Mudge's January 2015 applications for disability insurance benefits (DIB) and supplemental security income (SSI), in which Mudge claimed she became disabled on December 13, 2014, because of multiple sclerosis (MS), increased slurred speech, worsening

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

vision, difficulty typing and writing, and numbness on the right side of her body. At Mudge's request, a hearing was held before an administrative law judge (ALJ) on January 4, 2017, at which Mudge and a vocational expert testified. On July 21, 2017, the ALJ found that Mudge was under a disability from December 13, 2014, through January 8, 2016, but not thereafter. The ALJ determined that medical improvement occurred as of January 9, 2016, and that Mudge's disability ended as of that date given that she could then perform work that existed in significant numbers in the national economy. On March 31, 2018, the Appeals Council denied Mudge's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Mudge contends that the ALJ's decision that she sustained medical improvement as of January 9, 2016, is not supported by substantial evidence on the record as a whole. Mudge specifically argues that the ALJ erred when he failed to include a limitation in the residual functional capacity (RFC) assessment regarding potential difficulty with oral work instructions. Mudge contends that the ALJ should have at least explained why he did not include this limitation in the RFC given that he credited medical evidence that included an opinion that Mudge would be so limited. Mudge also contends that the ALJ erred when he relied on vocational expert testimony that was based upon a hypothetical that did not include the oral instruction limitation. Finally, Mudge argues that the ALJ erred in discounting the opinion of her treating neurologist

regarding her need to take unscheduled breaks and her potential absences from work. Mudge asks that I modify the Commissioner's final decision to find that she did not sustain medical improvement and thus continued to be disabled on and after January 9, 2016.

For the following reasons, I will affirm the decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Mudge's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF 11-1) to the extent they are admitted by the Commissioner (ECF 18-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (*id.*), which Mudge does not dispute. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Mudge must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

If there has been a medical improvement after a determination of disability, and such improvement relates to the claimant's ability to work, the disability will be found to have ended if the claimant is able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1594(a), (b)(3); 416.994(a), (b)(1)(iii).[2] "Medical improvement" is any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). To find that medical improvement ended a claimant's disability, the Commissioner must demonstrate that "the conditions which previously rendered the claimant disabled have ameliorated, and the improvement . . . is

---

[2] Both sides agree that the rules governing continuing disability review apply to Mudge's claim that she continued to be disabled on and after January 9, 2016.

related to claimant's ability to work." *Nelson v. Sullivan,* 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam) (citing 20 C.F.R. § 404.1594(b)(2)-(5)).

In determining medical improvement, the severity of the claimant's current condition is compared with the severity of her condition as of the date she was last found to be disabled. 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii). Once it has been established that there has been a medical improvement, the Commissioner must determine if it relates to the claimant's ability to work, that is, whether there has been a decrease in the severity of the claimant's impairments and an increase in her functional capacity to do basic work activities. 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(1)(iii). In making this determination, the Commissioner assesses the claimant's RFC and whether, with this RFC, the claimant can perform her past work. 20 C.F.R. §§ 404.1594(c)(2), 416.994(b)(2); 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the claimant can perform such work, the Commissioner will find the disability to have ended. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the claimant cannot engage in her past relevant work, the Commissioner must consider whether the claimant can perform other jobs with her current RFC. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If she cannot, the Commissioner will find claimant's disability to continue. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.  ALJ's Decision

In his written decision, the ALJ found that Mudge met the insured status requirements of the Social Security Act through December 31, 2015, and that she had not engaged in substantial gainful activity since December 13, 2014, the alleged onset date of disability. The ALJ found that Mudge's MS, C5-6 disc herniation with spinal canal encroachment, and mild MS-related neurocognitive disorder were severe impairments, but that these impairments did not meet or

medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-18, 21-23.)

The ALJ determined that from December 13, 2014, through January 8, 2016, Mudge had the RFC to perform sedentary work, but that she could

> [n]ever climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; can frequently handle and finger; must avoid concentrated exposure to extreme cold, heat, and humidity; must avoid all exposure [to] moving machinery and unprotected heights; no more than simple routine repetitive tasks; no more than occasional interaction with supervisors and co-workers; and an allowance to miss work two or more days per month.

(Tr. 18.) The vocational expert testified that a person limited to simple, routine, repetitive work with no required public interaction and no more than occasional interaction with supervisors and co-workers would be unable to perform Mudge's past relevant work as a receptionist, data entry clerk, and substitute teacher. (Tr. 63.) The vocational expert further testified that a person who regularly has more than one absence a month or takes more than two routine breaks during a workday would be precluded from competitive employment. (Tr. 64.) Based on this testimony, the ALJ found that with her RFC, Mudge could not perform her past relevant work or any other work that existed in significant numbers in the national economy. (Tr. 19-21.) The ALJ thus found Mudge to be disabled from December 13, 2014, to January 8, 2016. (Tr. 21.)

The ALJ further determined, however, that as of January 9, 2016, Mudge sustained medical improvement to such a degree that she was no longer disabled.

The ALJ found that while Mudge continued to not engage in substantial gainful activity and had the same severe impairments as those present during her disabled status, she nevertheless experienced medical improvement of her impairments that related to her ability to work because her RFC increased — specifically, that as of January 9, 2016, Mudge had the RFC to perform sedentary work with the same limitations as before, *except* that she would no longer miss work two or more days per month. (Tr. 21-24.) The ALJ found that this RFC still prevented Mudge from performing her past relevant work. However, considering Mudge's age, education, work experience, and RFC as of January 9, 2016, the ALJ found that Mudge could perform other work as it existed in significant numbers in the national economy, based on vocational expert testimony that a person with this RFC could perform work in small product assembly, goods assembly,[3] and circuit board touch-up. (*See* Tr. 63-64.) The ALJ therefore found that Mudge's disability ended January 9, 2016. (Tr. 24-25.)

C. <u>Limitation re Work Instructions in RFC</u>

Mudge contends that medical evidence credited by the ALJ showed that she was limited in her ability to perform work if instructions were given orally. Mudge claims that the ALJ should have included this limitation in her RFC and in the hypothetical posed to the vocational expert, and erred in his failure to explain why he did not do so. For the following reasons, the ALJ did not err. And even if he

---

[3] The vocational expert testified to work as "optical goods assembly." (Tr. 63-64.)

did, the error was harmless.

On March 18, 2017, Mudge underwent a consultative psychological evaluation for disability determinations. During this evaluation, Summer Johnson, Psy.D., determined Mudge's executive functioning to be normal, although deficits in memory functioning were noted. Mudge could repeat five digits forward and three backward, and conducted serial threes with no errors. Mudge's IQ scores placed her in the low average range of cognitive ability. During the examination, Mudge demonstrated poor concentration, good persistence, and a moderately slow pace. Dr. Johnson determined Mudge's memory to be mostly normal except for auditory memory. Information needed to be repeated several times. Dr. Johnson diagnosed Mudge with mild neurocognitive disorder due to MS. (Tr. 578-83.)

On that same date, Dr. Johnson completed a Medical Source Statement (MSS) of Ability to Do Work-Related Activities (Mental). In that MSS, Dr. Johnson opined, *inter alia*, that while Mudge had no restrictions in carrying out simple instructions, she had mild restrictions in understanding and remembering simple instructions. Dr. Johnson also opined that Mudge had mild restrictions in understanding, remembering, and carrying out complex instructions. Dr. Johnson explained that "working memory problems could lead to deficits in performance if work instructions are given orally." (Tr. 584.)

In his decision, the ALJ summarized Dr. Johnson's report and MSS and found them to be "generally consistent with the record" and "persuasive[] in

deciding the final determination." (Tr. 22.) The ALJ found that there was no change from Mudge's earlier RFC in cognitive or mental functioning in that she continued to have moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations with regard to concentration, persistence, or pace; and mild limitations in adapting or managing herself. (*Id.*) The ALJ therefore continued to limit Mudge to no more than simple, routine, and repetitive tasks with no more than occasional interaction with supervisors and co-workers. (Tr. 24.)

Mudge contends that with the ALJ finding that Dr. Johnson's opinion was consistent with other evidence and thus persuasive, he should have included an RFC limitation regarding her difficulty in following oral work instructions and erred when he failed to do so without explanation. An ALJ, however, is not required to rely entirely on a particular medical opinion in determining a claimant's RFC. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). *See also Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). Instead, he is required to base his disability determination upon a review of the record as a whole. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). That is what the ALJ did here.

In addition, contrary to Mudge's assertion, the ALJ was not required to

"weigh" medical opinion evidence in this case or explain why a medical source opinion was not adopted. In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence. Those amended regulations now provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the new rules, the Commissioner evaluates the "persuasiveness" of all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[4] Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

While generally these new rules apply to only those claims filed on or after March 27, 2017, *see* 20 C.F.R. §§ 404.1520c, 416.920c, they also apply to all continuing disability reviews, with certain exceptions not applicable here. *See* Social Security Administration, Program Operations Manual System (POMS), DI 24503.050 (effective Apr. 3, 2017 to present). Accordingly, because the parties

---

[4] The additional enumerated factors are the medical source's relationship with the claimant (with consideration given to the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and whether the source examined the claimant or reviewed records), the source's specialization, and "other factors" such as familiarity with other evidence or an understanding of the disability program. 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

agree that the ALJ's decision that Mudge was no longer disabled on or after January 9, 2016, constituted a continuing disability review, the new rules governing the evaluation of medical evidence apply to this part of the ALJ's analysis. Therefore, in determining Mudge's continuing disability, the ALJ here was not required to "weigh" Dr. Johnson's opinion or explain why he did not adopt the opinion in its entirety. The ALJ therefore did not err in his treatment of Dr. Johnson's opinion.

Regardless, assuming *arguendo* that the ALJ erred by failing to include in the RFC that Mudge was limited with respect to receiving oral work instructions, such error was harmless and does not provide a basis for remand. Persons performing work in the jobs described by the vocational expert – that is, as a small product assembly worker, an optical goods assembly worker, and a circuit-board touch-up worker – must be able to apply commonsense understanding to carry out "uninvolved written <u>or</u> oral instructions." *See Dictionary of Occupational Titles* (DOT) Nos. 739.687-030, 713.687-018, 726.684.110 (emphasis added). Indeed, taking instructions via any medium is not a significant factor in any of these jobs. *Id.* Because the vocational expert testified to work that does not rely exclusively on oral instructions for its performance and for which taking instructions is not a significant factor, any error in failing to include a non-oral-instruction limitation in the RFC or in the hypothetical to the vocational expert was harmless. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in

opinion when error had no bearing on the outcome).

D. <u>Unscheduled Work Breaks / Work Absences</u>

On January 6, 2017, Mudge's treating neurologist, Dr. K. Philip Lee, completed a Multiple Sclerosis RFC Questionnaire in which he opined, *inter alia*, that Mudge's impairment would cause her to sometimes need to take unscheduled breaks during an eight-hour workday and to miss work more than four days per month. (Tr. 573-76.) The ALJ did not accept this opinion to the extent it applied to the period after January 9, 2016, explaining that there was no basis in the record to support it and, further, because Dr. Lee's own treatment notes during the relevant period were contrary to the opined limitation. (Tr. 23.) Mudge claims this was error.

Mudge argues that the ALJ failed to weigh the opinion of this treating physician under the factors set out in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus failed to accord appropriate weight to the opinion. However, as discussed above, the new rules governing the evaluation of medical evidence apply to the continuing disability review portion of the ALJ's decision. The treating-physician rule under §§ 404.1527(c)(2) and 416.927(c)(2) no longer applies to continuing disability reviews. The ALJ therefore could not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion, including that from Mudge's treating physician. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Nevertheless, the reasons given by the ALJ to not accept Dr. Lee's opinion

regarding breaks and absences are supported by substantial evidence on the record as a whole. The ALJ found that during the period of disability, that is, from December 2014 to January 2016, Mudge experienced slurred speech, vision problems, difficulty writing and typing, and numbness on the right side of her body. She experienced frequent MS flares and relapses throughout this period – some requiring hospitalization – during which she was dizzy, had vertigo, was vomiting, and had cognitive deficits with "word searching." MRIs showed increased lesions. In January 2016, however, Dr. Lee changed Mudge's medication from Avonex to Gelinya, after which Mudge experienced no relapses. Although she reported some residual hand paresthesia and patchy numbness in her legs, which Dr. Lee considered to be "minor," she had no recurrent symptoms and no complaints. (Tr. 407-08, 411, 423, 438.) In March 2016, Mudge reported that she was doing very well and had no MS flares. (Tr. 424.) In September 2016, Dr. Lee found that Mudge was clinically stable without relapse, noting that she had no recurrent symptoms since starting the new medication. (Tr. 438.) He also noted that Mudge was "quite pleased" with her current stability. (*Id.*) The treatment notes also show that after Mudge began treatment with Gelinya in January 2016, she no longer had communication/language problems as she experienced in 2015. (*Compare* Tr. 335, 346, 393 *with* Tr. 412, 426, 441, 442.)

Given the substantial evidence that Mudge no longer experienced debilitating symptoms after she began treatment with Gelinya in January 2016, the

ALJ did not err in declining to accept Dr. Lee's opinion regarding unscheduled breaks and work absences for the period beginning January 9, 2016. *See* 20 C.F.R. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (consistency is one of two "most important" factors in determining persuasiveness of medical source's opinion); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (inconsistency with other substantial evidence alone is a sufficient basis for ALJ to not accept a medical source's opinion). The ALJ's determination that such an opinion had no basis in the record and was contrary to Dr. Lee's own treatment notes is supported by substantial evidence on the record as a whole. I must therefore affirm this determination.

**Conclusion**

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above on the claims raised by Mudge on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Mudge's disability ended as of January 9, 2016. I must therefore affirm the decision. *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED,** and plaintiff Deborah Mudge's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of July, 2019.